ACCEPTED
03-13-00101-CV
5826589
THIRD COURT OF APPEALS
AUSTIN, TEXAS
6/25/2015 2:53:54 PM
JEFFREY D. KYLE
CLERK

NO. 03-13-00101-CV

IN THE COURT OF APPEALS
FOR THE THIRD COURT OF APPEALS DISTRICT
AUSTIN, TEXAS

FILED IN
3rd COURT OF APPEALS
AUSTIN, TEXAS
6/25/2015 2:53:54 PM
JEFFREY D. KYLE
Clerk

RENT-A-CENTER, INC.,
APPELLANT

V.

GLEN HEGAR, in his capacity as
COMPTROLLER OF PUBLIC ACCOUNTS OF THE STATE OF TEXAS;
and
KEN PAXTON, in his capacity as
ATTORNEY GENERAL OF THE STATE OF TEXAS,

APPELLEES

On Appeal from the
250th Judicial District Court
Travis County, Texas

APPELLANT'S MOTION FOR REHEARING

Daniel L. Butcher
State Bar No. 03512050
P. Michael Jung
State Bar No. 11054600
Strasburger & Price, LLP
901 Main Street, Suite 4300
Dallas, Texas 75202-3794

Farley P. Katz
State Bar No. 11108790
Forrest M. (Teo) Seger III
State Bar No. 24070587
Strasburger & Price LLP
2301 Broadway
San Antonio, Texas 78215
(210) 250-6000 Telephone
(210) 250-6100 Facsimile

ATTORNEYS FOR APPELLANT
(Additional Counsel on Signature
Page)

# TABLE OF CONTENTS

TABLE OF CONTENTS .................................................................................I

TABLE OF AUTHORITIES............................................................................II

INTRODUCTION........................................................................................1

ISSUE PRESENTED ..................................................................................3

ARGUMENT AND AUTHORITIES ...............................................................4

    The Parties Stipulated to all Relevant Facts at Trial, Enabling
    the Court to Dismiss the Jury ............................................................4

    Rent-A-Center's Cost of Goods Sold is not Reduced by any
    Depreciation Claimed on its Federal Tax Returns ..............................8

CONCLUSION .........................................................................................10

CERTIFICATE OF SERVICE ....................................................................11

CERTIFICATE OF COMPLIANCE ............................................................11

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Carlton Energy Group, LLC v. Pal,*
2012 Tex. App. Lexis 1218 (Tex. App.—Houston [14th Dist.] 2012,
no pet.) .................................................................................................7

*Western Steel Co. v. Altenburg,*
206 S.W.3d 121 (Tex. 2006).................................................................7

## STATUTES

Tex. Tax Code Ann.

§ 171.101 ..............................................................................................4

§ 171.101(a)(1)(A).............................................................................4, 7

§ 171.101(a)(1)(B)(ii)(a)........................................................................4

§ 171.1012 .........................................................................................4, 8

§ 171.1012(c) .......................................................................................8

§ 171.1012(c)(6)...................................................................................9

§ 171.1012(f).........................................................................................8

## RULES

Tex. R. App. P.

Rule 38.1(g)...........................................................................................7

Rule 43.3...........................................................................................2, 3, 8

Rule 49 .................................................................................................3

ii

1845369.7/SPSA/67691/0102/062515

NO. 03-13-00101-CV

IN THE COURT OF APPEALS
FOR THE THIRD COURT OF APPEALS DISTRICT
AUSTIN, TEXAS

---

RENT-A-CENTER, INC.,
APPELLANT

V.

GLEN HEGAR, in his capacity as
COMPTROLLER OF PUBLIC ACCOUNTS OF THE STATE OF TEXAS;
and
KEN PAXTON, in his capacity as
ATTORNEY GENERAL OF THE STATE OF TEXAS,

APPELLEES

---

On Appeal from the
250th Judicial District Court
Travis County, Texas

---

APPELLANT'S MOTION FOR REHEARING

---

**APPELLANT'S MOTION FOR REHEARING**

Appellant Rent-A-Center, Inc. ("Rent-A-Center") respectfully moves this Court for rehearing.

## INTRODUCTION

Appellant is Rent-A-Center, Inc. Appellees are Glen Hegar, in his capacity as Comptroller of Public Accounts of the State of Texas and Ken

Paxton, in his capacity as Attorney General of the State of Texas (collectively, the "Comptroller").

A panel of this Court, consisting of Justices Puryear, Goodwin, and Field, issued the opinion in this case on June 11, 2015. A copy of the opinion is attached as Appendix 1.

The primary issue in this case is whether Rent-A-Center is primarily engaged in retail trade and subject to the one-half percent tax rate. The panel resolved this issue in favor of Rent-A-Center. The sole remaining issue is whether Rent-A-Center's original cost-of-goods-sold deduction must be reduced by the amount deducted as "depreciation" on such goods in its federal tax return. This issue was duly raised by Rent-A-Center before this Court and briefed.[1] Rent-A-Center Br. 43-46; Reply Br. 20-21. Instead of deciding the issue, the panel remanded the case to the trial court for a determination of the appropriate amount of Rent-A-Center's cost-of-goods-sold deduction.

All the facts relevant to the costs-of-goods-sold issue, however, were agreed to by the parties, including the original purchase price of the goods

---

[1] The Comptroller chose not to respond to Rent-A-Center's argument, but asserted, without citing any authority, that the Court "must" remand the case if that issue is reached. Comptroller Br. 38-39. The Comptroller's assertion is directly contrary to Appellate Rule 43.3 which requires in these circumstances that the appellate court "*must* render the judgment that the trial court should have rendered." (Emphasis supplied.) *See* Reply Br. 21.

2

sold and the amount deducted as "depreciation" on such goods in its federal tax returns. All that remains is the purely legal question whether the amount of Rent-A-Center's original cost of goods sold must be reduced by the amount of such "depreciation." The parties stipulated that if the court ruled in favor of Rent-A-Center on both legal questions (regarding retail trade and reduction for depreciation), it was then entitled to deduct cost of goods sold in the amount of $1,055,657,987. Otherwise, its taxable margin would be 70 percent of its gross revenue.

Based on principles of judicial economy, Rule 43.3 of the Rules of Appellate Procedure provides in relevant part that "[w]hen reversing a trial court's judgment, the court must render the judgment that the trial court should have rendered." Since all facts relevant to the remaining issue are stipulated, this Court should reconsider this case and rule on the sole remaining question of law. Tex. R. App. P. 49.

## ISSUE PRESENTED

Whether Rent-A-Center's cost-of-goods-sold deduction must be reduced by the amount deducted as "depreciation" on such goods in its federal tax returns.

3

## ARGUMENT AND AUTHORITIES

The Texas Tax Code provides several methods for computing a taxable entity's taxable margin for purposes of the franchise tax, and an entity is entitled to use the computational method it finds most favorable. *See* Tex. Tax Code Ann. §171.101. Two such methods are relevant to Rent-A-Center and this dispute.

First, Rent-A-Center—like all entities—is entitled to calculate its taxable margin as 70 percent of its total revenue pursuant to Tax Code Section 171.101(a)(1)(A). This method of calculation is often referred to as the 30 percent deduction or standard deduction. Alternatively, a taxable entity selling "tangible personal property sold in the ordinary course of business" is entitled to instead deduct its "cost of goods sold" from its total revenue to determine its taxable margin. Tex. Tax Code Ann. § 171.101(a)(1)(B)(ii)(a).

### The Parties Stipulated to all Relevant Facts at Trial, Enabling the Court to Dismiss the Jury

At trial, Rent-A-Center contended that it was entitled to deduct its cost of goods sold. 4 RR 210-212. Hugh Tollack, Rent-A-Center's Director of Tax Audits, Research and Planning, testified that Rent-A-Center's cost of goods sold under Tax Code Section 171.1012 for the franchise tax return at issue was $1,055,657,987. 3 RR 193-99, 4 RR 141-142. The calculation

4

supporting that number was introduced into evidence as Plaintiff's Exhibit 16, Schedule A. Exhibit 16 also included the total depreciation claimed on Rent-A-Center's federal income tax return relating to the goods sold, which was $562,966,741. See PX16, page 1; 4 RR 141-142. The Comptroller did not dispute any of the numbers on Exhibit 16 or offer any evidence to the contrary.

On the third day of trial, the court considered dismissing the jury on the grounds there were no factual matters in dispute. The court felt that there were no factual issues relating to whether Rent-A-Center was engaged in retail trade and then inquired into as to whether there were any factual issues regarding the cost of goods sold. 4 RR 115-124.

The Comptroller's primary position was that Rent-A-Center was not engaged in retail trade and consequently could not deduct cost of goods sold. Alternatively, the Comptroller argued that if Rent-A-Center *was* engaged in retail trade, its cost of goods sold must be reduced by the amount of depreciation it claimed on those goods on its federal tax returns. (The Comptroller phrased this as stating that Rent-A-Center's cost of goods sold was its original cost net of depreciation taken on its federal tax returns and that it was not "allowed" to add back or to "get" that depreciation; that is equivalent to saying that its original cost must be reduced by that

5

depreciation.) The Comptroller agreed that in either of those two instances (not retail trade, or retail trade with reduction for depreciation), Rent-A-Center would be taxed on 70 percent of its gross revenue, as that would produce the least tax. Only if Rent-A-Center prevailed on both issues would it be allowed its original cost of goods sold without reduction by depreciation. PX 16, Schedule A; 3 RR 193-199; 4 RR 110-117, 141-142.

Counsel for the Comptroller summarized the three possible outcomes and expressly stipulated that in the event the court held that Rent-A-Center was engaged in retail trade and that its cost of goods sold was not reduced by depreciation claimed, then "we'll go with their numbers":

> Mr. ELDRED [Comptroller]: Either 70 percent not retail trade, 70 percent because they are retail trade but don't get depreciation, or we'll go with their numbers and object accordingly if they are in retail trade and do get depreciation.

> MR. CLOUDT [Comptroller]: We make these stipulations subject to our rights to appeal up to the appellate court.

> THE COURT: Okay.

> MR. CLOUDT: Whether your determination was correct on - on the -

> MR. ELDRED: Those two issues.

> MR. CLOUDT: Yeah, those two issues.

> MR. KATZ [Rent-A-Center]: For our side, we make these stipulations subject to our contentions that there are jury – there are factual questions for the jury, including the retail trade question.

6

THE COURT:  Okay. ...

4 RR 117.

In other words, the parties stipulated that if the court held (1) that

Rent-A-Center was primarily engaged in retail trade; and also (2) that its

cost-of-goods-sold deduction was not reduced by depreciation claimed on

its federal tax returns, then it is entitled to a cost-of-goods-sold deduction of

$1,055,657,987.  Otherwise, Rent-A-Center's taxable margin is 70 percent

of its gross revenue pursuant to Tax Code Section 171.101(a)(1)(A).  PX

16, Schedule A; 3 RR 193-199; 4 RR 115-117, 139-148.[2]  The trial court

understood the parties had stipulated as to all relevant facts.  4 RR 121,

144-145, 211.

Since the parties had thus stipulated as to the amount of cost of

goods sold in the event the court ruled in favor of Rent-A-Center on both

legal issues (retail trade and whether depreciation reduced cost of goods

sold), no factual issues remained in the case, and the parties agreed that

the court could dismiss the jury.  4 RR 117-124.  (The Comptroller made no

---

[2] Consistent with this agreement, the Comptroller did not dispute before this Court Rent-A-Center's statement in its opening brief that this issue was fully stipulated.  Moreover, because the Comptroller failed to contradict or dispute the numbers presented by Rent-A-Center in its Brief of Appellant, the Court must accept them as true.  *See* Tex. R. App. P. 38.1(g); *see also Western Steel Co. v. Altenburg*, 206 S.W.3d 121, 124 (Tex. 2006) (undisputed facts taken as true); *Carlton Energy Group, LLC v. Pal*, 2012 Tex. App. Lexis 1218 at *11-12 (Tex. App.—Houston [14th Dist.] 2012, no pet.) (factual assertions not directly disputed taken as true).

7

objection to the court's ruling that there were no questions of fact and dismissal of the jury. Rent-A-Center preserved its objections to those rulings, but on appeal conceded there are no questions of fact remaining).

Since there are no factual issues left in dispute, this Court should rule on the sole remaining legal question. *See* Tex. R. App. P. 43.3.

## Rent-A-Center's Cost of Goods Sold is not Reduced by any Depreciation Claimed on its Federal Tax Returns

Rent-A-Center is entitled to deduct $1,055,657,987, which is its cost of the goods it sold to customers in 2007, not reduced by any depreciation claimed on those goods in earlier years on its federal tax returns. The Comptroller claims that Rent-A-Center's cost of goods sold must be reduced by all depreciation it claimed on those goods on its federal income tax returns. The Comptroller is mistaken.

Tax Code Section 171.1012 defines allowable "cost of goods sold" for Texas franchise tax purposes. It is defined in relevant part as "all direct costs of acquiring or producing the goods" plus certain indirect costs. *See* Tex. Tax Code Ann. §§ 171.1012(c) and (f).

The statute also includes a variety of other rules for determining the cost of goods sold. *See* Tex. Tax Code Ann. § 171.1012. "Depreciation" is mentioned only once in that statute in connection with taxpayers who "produce" the goods they sell, and the statute provides that such taxpayers

8

may *increase* their cost of goods sold by depreciation claimed on their federal tax returns "to the extent associated with and necessary for the production of goods...". Tex. Tax Code Ann. §171.1012(c)(6). That provision applies, for example, to a business that uses machinery to produce goods which it sells, in which case it would be allowed to increase its cost of goods sold (not *decrease* as the Comptroller here argues) by the amount of depreciation it claimed on such machinery on its federal tax returns. *See id.* That provision has no application here, and there is no other provision in the statute or the Comptroller's rules referring to depreciation claimed on a federal tax return. Nor is there any provision stating that the cost of goods sold for a taxpayer who *purchases* goods like Rent-A-Center is anything other than its original cost plus indirect costs. The fact that Rent-A-Center may have claimed depreciation on goods on its federal tax return is simply irrelevant to the calculation of its cost of goods sold for Texas franchise tax purposes.

The Comptroller cites no statutory or regulation supporting its position that Rent-A-Center's cost of goods sold must be reduced by the amount of depreciation claimed on its federal income tax returns. There is no such authority. Accordingly, Rent-A-Center is entitled to deduct the full $1,055,657,987 as cost of goods sold.

9

## CONCLUSION

Rehearing should be granted, the opinion issued by this Court on June 11, 2015, should be modified, and the Court should rule that Rent-A-Center is entitled to a cost of goods sold deduction in the amount of $1,055,657,987, and remand the case to the trial court to determine the amount to be refunded to Rent-A-Center, including interest as prescribed by law.

Respectfully submitted,

Daniel L. Butcher
State Bar No: 03512050
dan.butcher@strasburger.com
P. Michael Jung
State Bar No. 11054600
michael.jung@strasburger.com
Strasburger & Price, LLP
901 Main Street, Suite 4300
Dallas, Texas 75202-3794

/s/ Farley P. Katz
Farley P. Katz
State Bar No. 11108790
farley.katz@strasburger.com
Forrest M. (Teo) Seger III
State Bar No. 24070587
teo.seger@strasburger.com
Strasburger & Price, LLP
2301 Broadway
San Antonio, Texas 78215
(210) 250-6000 Telephone
(210) 250-6100 Facsimile

And

10

Robert M. O'Boyle
State Bar No. 15165425
bob.oboyle@strasburger.com
Clinton A. Rosenthal
State Bar No. 24037393
clint.rosenthal@strasburger.com
Strasburger & Price, LLP
720 Brazos Street, Suite 700
Austin, Texas 78701
(512) 499-3600 Telephone
(512) 499-3660 Facsimile

ATTORNEYS FOR APPELLANT
RENT-A-CENTER, INC.

## CERTIFICATE OF SERVICE

Pursuant to E-Filing Standing Order, I certify that on June 25, 2015, I electronically filed the foregoing with the Clerk of Court using the EFile.TXCourts.gov electronic filing system which will send notification of such filing to the following:

Matthew H. Frederick, Esq.
Jim B. Cloudt, Esq.
Charles K. Eldred
Assistant Attorney General
Financial and Tax Litigation Division
P.O. Box 12548
Austin, Texas 78711-2548

/s/ Farley P. Katz
Farley P. Katz

## CERTIFICATE OF COMPLIANCE

This motion complies with Tex. R. App. P. 9.4(i)(2)(D), because the brief contains 1919 words, excluding the parts of the brief exempted by Tex. R. App. P. 9.4(i)(1).

/s/ Farley P. Katz
Farley P. Katz

11

1845369.7/SPSA/67691/0102/062515

# APPENDIX 1

# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-13-00101-CV

### Rent-A-Center, Inc., Appellant

#### v.

### Glenn Hegar, in his capacity as Comptroller of Public Accounts of the State of Texas; and Ken Paxton, in his capacity as Attorney General of the State of Texas, Appellees

**FROM THE DISTRICT COURT OF TRAVIS COUNTY, 250TH JUDICIAL DISTRICT
NO. D-1-GN-11-001059, HONORABLE LORA J. LIVINGSTON, JUDGE PRESIDING**

## O P I N I O N

This case presents an issue of first impression: whether a "rent-to-own" business whose majority of revenues comes from making merchandise available to customers via "rental-purchase" agreements is "primarily engaged in retail trade" for Texas franchise-tax purposes.[1] The Comptroller audited Rent-A-Center, Inc.'s franchise tax return for 2008 and assessed a deficiency of over one million dollars because it determined that Rent-A-Center was not primarily engaged in

---

[1] Recent amendments to the Tax Code render this issue moot going forward. *See* Tex. Tax Code § 171.0001(12)(D) (definition of "retail trade" now specifically includes "rental-purchase agreement activities regulated by Chapter 92, Business & Commerce Code" as well as several other activities involving rental of items). However, the statute applicable at the time of the dispute was silent on the subject of rental-purchase agreements. *See* Act of May 2, 2006, 79th Leg., 3d C.S., ch. 1, § 2, sec. 171.0001(12), 2006 Tex. Gen. Laws 1, 2 (amended 2015) (current version at Tex. Tax Code § 171.0001(12)(D)). We may not look to the recent legislature's amendments for insight on the intent or understanding of a previous legislature. *See Strayhorn v. Willow Creek Res., Inc.*, 161 S.W.3d 716, 722 (Tex. App.—Austin 2005, no pet.).

retail trade and not, therefore, entitled to the one-half-percent tax rate with which Rent-A-Center calculated its taxes. *See* Tex. Tax Code § 171.002(a), (b) (franchise tax is one percent of taxable margin except for entities "primarily engaged in retail or wholesale trade," which are subject to one-half-percent rate).

Rent-A-Center paid the deficiency under protest and filed a suit for a refund. *See id.* §§ 112.001, .051, .052. The case was tried before a jury, but the trial court dismissed the jury after determining that the only issues in dispute were legal questions for the court to decide. The trial court held that Rent-A-Center is not entitled to a refund.[2] Because we conclude that Rent-A-Center is primarily engaged in retail trade, we reverse the trial court's judgment, render judgment that Rent-A-Center is entitled to a refund based on computing its taxes with the one-half-percent tax rate, and remand this cause for a determination of the amount of refund to which Rent-A-Center is entitled.

## BACKGROUND

Rent-A-Center is the largest "rent-to-own" business in the United States, operating over 3,000 stores nationwide, in Canada, and in Puerto Rico. Through its showrooms, Rent-A-Center offers its customers merchandise in four basic product categories: furniture and accessories, major consumer electronics, appliances, and computers. All of the merchandise is available for immediate purchase from the showroom floor by payment with cash or credit card. However, the vast majority

---

[2] Because of its legal determination on Rent-A-Center's entitlement to a refund, the trial court did not reach the second main issue at trial: the amount of deduction for the cost of goods sold that Rent-A-Center is entitled to deduct from its total revenue. *See* Tex. Tax Code §§ 171.101, .1012(c-f) (taxable margin is lesser of (1) 70% of total revenue or (2) amount of total revenue, reduced by (a) compensation paid to individuals serving active military duty and (b) *either* cost of goods sold or other compensation paid).

2

of Rent-A-Center's revenue derives from payments for merchandise made available to customers on a "rent-to-own" basis pursuant to "rental-purchase agreements." Under such an agreement, the customer may choose among weekly, semi-monthly, or monthly payment intervals. Payment is due at the beginning of each term, and the agreement renews automatically for another term upon receipt of each payment.

The agreements further provide that a customer acquires ownership of the merchandise by making all required payments over a specified period of time; the average full term for a merchandise item is eighteen months, which is substantially shorter than the useful life of the merchandise. While a customer may terminate the agreement at any time and return the merchandise without penalty—and may later "reinstate" the agreement by receiving credit for the payments already made on either the same or substantially the same merchandise—Rent-A-Center may not terminate the agreement so long as the customer fulfills its terms.

In addition to the automatic ownership transfer after the period established in the rental-purchase agreement, the agreements provide two other flexible options through which customers may sooner acquire ownership of the merchandise: (1) a "90-days same as cash" provision, by which the customer may purchase the merchandise by paying the specified "cash purchase price" within ninety days of entering into the agreement; and (2) an "early purchase option," by which the customer pays a specified percentage of the amount of remaining payments due at the time such option is exercised. Merchandise that has been returned to or repossessed by Rent-A-Center is refurbished and made available to customers under similar terms as new merchandise, with a price adjustment to reflect that the merchandise is used.

3

Ninety-seven percent of Rent-A-Center's merchandise is sold to customers by means of showroom-floor cash purchases, "90-days same as cash," "early purchase options," or completion of all scheduled payments under rental-purchase agreements. The remaining three percent that is not sold is merchandise that is stolen, damaged, or lost through casualty. In 2007, the average time that a merchandise item spent in Rent-A-Center's system was twenty months, including time in a customer's possession while subject to a rental-purchase agreement plus any idle time in inventory, and ownership to any given item transferred to a customer after an average of three rental-purchase agreements. Also in 2007, over ninety percent of Rent-A-Center's revenues were from payments received under rental-purchase agreements.

In its original franchise tax report for 2008,[3] Rent-A-Center reported that its business activities were described in Division G (Retail Trade) of the Standard Industrial Classification (SIC) Manual and asserted that it was subject, therefore, to the one-half-percent tax rate applicable to entities primarily engaged in retail trade. *See* Act of May 2, 2006, 79th Leg., 3d C.S., ch. 1, § 2, sec. 171.0001(12), 2006 Tex. Gen. Laws 1, 2 (amended 2015) (current version at Tex. Tax Code § 171.0001(12)) ("Former Section 171.0001(12)"); Tex. Tax Code § 171.002(a), (b). Rent-A-Center also claimed a deduction for its cost of goods sold in the amount of $1,200,108,807. In an audit of this report, the Comptroller determined that Rent-A-Center was a service business under Division I (Services) of the SIC Manual and that, accordingly, Rent-A-Center was not eligible for the one-half-percent rate but instead was subject to the one-percent tax rate for

---

[3] A tax report for a given year is based on revenues and other financial data from the previous year. *See Universal Frozen Foods Co. v. Rylander*, 78 S.W.3d 588, 590 (Tex. App.—Austin 2002, no pet.).

4

entities not primarily engaged in retail trade. *See* Tex. Tax Code § 171.002(a), (b). Additionally, the Comptroller disallowed Rent-A-Center's claimed deduction for cost of goods sold. The Comptroller issued an Adjustment Report assessing a deficiency of $1,070,683.67, plus interest. Rent-A-Center paid this amount under protest and, in this lawsuit, seeks a refund.

## DISCUSSION

The basic facts in this case are not in dispute, and the only issue for our review is the proper application of the franchise-tax statutes to the undisputed facts, requiring us to determine whether Rent-A-Center is "primarily engaged" in retail trade. *See id.* § 171.002(c) (taxable entity is primarily engaged in retail or wholesale trade if "total revenue from its activities in retail or wholesale trade is greater than the total revenue from its activities in trades other than the retail or wholesale trades"); Former Section 171.0001(12) ("retail trade" means "the activities described in Division G of the 1987 Standard Industrial Classification Manual published by the federal Office of Management and Budget"). Essentially, we are asked to determine whether the trial court properly concluded that Rent-A-Center's rent-to-own activities are more like leasing than selling. We conclude that they are not. Rather, we conclude that the majority of Rent-A-Center's activities constitute retail trade and—because the majority of its revenues comes from such activities—it is primarily engaged in retail trade as a matter of law.

The construction of a statute is a question of law that we review de novo. *First Am. Title Ins. Co. v. Combs*, 258 S.W.3d 627, 632 (Tex. 2008). Our primary objective in construing statutes is to give effect to the legislature's intent, which we seek first and foremost in the statutory text. *Id.* Absent legislative definition, we rely on the plain meaning of the text unless a different

5

meaning is apparent from the context or application of the literal language would lead to absurd results. *City of Rockwall v. Hughes*, 246 S.W.3d 621, 625-26 (Tex. 2008); *see* Tex. Gov't Code § 311.011(a) ("Words and phrases shall be read in context and construed according to the rules of grammar and common usage."). If an undefined term has multiple common meanings, we will apply the definition most consistent with the context of the statutory scheme. *State v. $1,760.00 in U.S. Currency*, 406 S.W.3d 177, 180-81 (Tex. 2013).

The Tax Code refers to the well-known SIC Manual for descriptions of activities that fall under the umbrella of retail trade. A copy of the relevant portions of the SIC Manual was admitted into evidence. Division G of the manual, covering retail trade, provides:

> This division includes **establishments engaged in selling merchandise** for personal or household consumption and rendering services incidental to the sale of the goods. In general, retail establishments are classified by the kind of business according to the principal lines of commodities sold (groceries, hardware, etc.), or the usual trade designation (drug store, cigar store, etc.). Some of the important characteristics of retail trade establishments are: the establishment is usually a place of business and is engaged in activities to attract the general public to buy; the establishment buys or receives merchandise as well as sells; the establishment may process its products, but such processing is incidental or subordinate to selling; the establishment is considered as retail in the trade; and the establishment sells to customers for personal or household use. Not all of these characteristics need be present and some are modified by trade practice.

(Emphasis added.)

Thus, we must determine whether Rent-A-Center is "engaged in selling merchandise" as contemplated by the SIC Manual and, if so, whether the majority of its revenues comes from such activities. The following undisputed facts are relevant: (1) one hundred percent of Rent-A-Center's merchandise is offered for sale; (2) ninety-seven percent of its merchandise, for which it receives

6

ninety percent of its revenues, is sold in an average of twenty months per item; (3) the average number of rental-purchase agreements after which any given item is ultimately sold is three; and (4) the total price that a customer must pay for a given item decreases from one rental-purchase agreement to the next for that same item due to the item's then being considered used. In short: ninety-seven percent of Rent-A-Center's merchandise, for which it receives ninety percent of its revenues, is sold in an average of twenty months.

Given these facts, the Comptroller's contention that Rent-A-Center is not primarily engaged in "retail trade" (i.e., selling merchandise) is strained. The Tax Code asks whether the revenues from Rent-A-Center's *activities* in retail trade exceed those from *activities* in other trades, but the Comptroller frames the question as asking whether Rent-A-Center's revenues from *sales* exceed its revenues from *leases*. The Comptroller relies almost exclusively on Rent-A-Center's SEC 10-K filing wherein it characterized its revenues from the rental-purchase agreements as "rentals and fees" and only a small minority of its revenues as "merchandise sales" as well as the fact the agreements refer to the arrangement as a "rental" agreement. The characterization in Rent-A-Center's 10-K is neither dispositive nor, in light of all the facts, accurate.[4] *See Destec Energy, Inc. v. Houston Lighting & Power Co.*, 966 S.W.2d 792, 794-95 (Tex. App.—Austin 1998, no pet.) (substance of transaction will generally control over its form); *see also Southgate Master Fund, L.L.C. ex rel. Montgomery Capital Advisers, LLC v. United States*, 659 F.3d 466, 479 (5th Cir. 2011)

---

[4] For example, besides the 10-K, the record also contains Rent-A-Center's federal tax return for 2007 in which it identified its "business activity code" as number 453990, which is defined as "all other miscellaneous store retailers," appearing as a subcategory under the larger principal activity of "retail trade" and in which it claimed its revenues from the rental-purchase agreements on line 1 as "gross receipts or sales" rather than on line 6 as "gross rents."

7

(transaction's tax consequences depend on its substance rather than its form).

The Comptroller also takes issue with the use of the following terms in the rental-purchase agreements, arguing that the terms support its contention that Rent-A-Center is primarily engaged in renting: "rental," "lease," "lessor," and "lessee." However, the agreements also use terms supporting characterization of these arrangements as sales: "purchase," "consumer," "owner," and "ownership." The default occurrence, upon the customer making all specified payments under the agreement's terms, is that the customer acquires ownership of the merchandise. Rent-A-Center may not prevent the customer from acquiring ownership in this manner once the agreement is in place unless the customer breaches one of the agreement's provisions. And, while the Comptroller notes that title to the merchandise remains with Rent-A-Center at all times until the full purchase price has been paid, such fact is not inconsistent with the facts that (1) for ninety-seven percent of merchandise, title in fact *does* pass to the customer; and (2) the customer may acquire title to the merchandise *at any time* by paying the remaining cost. Undoubtedly the rental-purchase transactions are hybrids of rentals and sales. The salient question is: Are they *more* like sales or leases?

In light of the undisputed facts, we conclude that Rent-A-Center's offer of merchandise to customers under the rental-purchase agreements is more like selling than leasing and that Rent-A-Center is, therefore, primarily engaged in retail trade. We sustain Rent-A-Center's first issue and hold that the trial court erred in determining that Rent-A-Center is not entitled to a refund.

In its second issue, Rent-A-Center seeks a judgment that it is entitled to its requested cost-of-goods-sold deduction, without reduction for depreciation claimed on its federal tax return, as no statutes explicitly require such deduction. *See* Tex. Tax Code § 171.1012(b-f) (providing

8

extensive lists of includable and excludable direct and indirect costs in computing cost of goods sold). However, because it concluded that Rent-A-Center was not entitled to a refund, the trial court did not reach the issue of the amount of deduction to which Rent-A-Center is entitled and whether the amount of depreciation claimed on its federal tax return should operate to reduce its franchise-tax deduction. Accordingly, we make no determination on the issue of the amount of Rent-A-Center's deduction for cost of goods sold and remand that issue to the trial court for a factual determination in the first instance.[5]

## CONCLUSION

The trial court erred in determining that Rent-A-Center is not entitled to a franchise-tax refund. Accordingly, we reverse its judgment and render judgment that Rent-A-Center is subject to the one-half-percent franchise-tax rate for tax year 2008 and is, therefore, entitled to a refund of its overpayment. We remand this cause to the trial court for a determination of the amount of refund to which Rent-A-Center is entitled.

---

[5] We also note that, despite Rent-A-Center's representations to the contrary, we cannot glean from the record any specific stipulations by the parties about the schedules that Rent-A-Center submitted as evidence of its cost of goods sold and, therefore, we are not presented with merely a question of law on the issue of cost of goods sold. *Cf. Texas Utils. Elec. Co. v. City of Waco*, 919 S.W.2d 436, 440 (Tex. App.—Waco 1995, writ denied) (when issue to be determined is question of law, appellate court may render judgment instead of remanding case for further proceedings).

_____

David Puryear, Justice

Before Justices Puryear, Goodwin, and Field

Reversed and Remanded

Filed:   June 11, 2015

10